IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **MALIKAH SANDREE DEIHS** § | |
| § | |
| **V.** § | |
| § | **A-14-CV-495-AWA** |
| **CAROLYN W. COLVIN,** § | |
| **COMMISSIONER OF THE** § | |
| **SOCIAL SECURITY ADMINISTRATION** § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Complaint seeking reversal of the Social Security Administration's final decision (Dkt. No. 5); Plaintiff's Brief in Support of Claim (Dkt. No. 17); and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 18). Also before the Court is the Social Security record filed in this case (cited as "Tr.").

**I. General Background**

Plaintiff Malikah Sandree Deihs ("Deihs") filed her application for disability insurance benefits on November 9, 2010, alleging a disability onset date of October 1, 2008, due to mental impairments. Tr. 149-54, 155-57, 175. The Administration denied Deihs' application initially and on reconsideration. Tr. 102-07, 110-12, 113-15. Pursuant to Deihs' request, an Administrative Law Judge (ALJ) held a hearing on October 24, 2012. Tr. 28-93. Deihs was 28 years of age at the time of the hearing. Tr. 37. On February 15, 2013, the ALJ issued a decision denying Deihs' application, finding that she could perform other work existing in significant numbers in the national economy. Tr. 13-22. Deihs requested review of the ALJ's decision, which the Appeals Council denied on March 24, 2014 (Tr. 1-4), thereby making the ALJ's decision the Commissioner's final decision.

## II.  Definitions and Legal Standards

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine if a claimant is disabled the Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. § 404.1520.  A finding of disability or no disability at any step "is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).  The claimant has the burden of proof for the first four steps; however, at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).  Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (internal quotation marks omitted).  The Court considers "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history."  *Id.* at 174.  However, a reviewing court "may not reweigh the evidence, try the issues *de novo*, or substitute [its] judgment for that of the [Commissioner]."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  If the Court finds substantial evidence to support the decision, the Court must uphold the decision.  *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); *see also* 42 U.S.C. § 405(g).

### III.  Issues

Deihs alleges the following issues: (1) whether the ALJ should have found she met Listing 12.05C; (2) whether the ALJ properly considered the opinion of Deihs' treating psychologist, Wilton L. Hellems, Ph.D.; and (3) whether the ALJ properly considered the evidence, particularly a letter from Deihs' former employer and Deihs' medication noncompliance, in finding that Deihs' claim of disability was not fully credible. Dkt. No. 17 at 3.

## IV.  Analysis

**A.     The ALJ's Determination Regarding Listing 12.05C**

Deihs first argues that the ALJ's decision is in error because it contains no discussion of Deihs's eligibility for benefits pursuant to Listing 12.05C.  Deihs argues that, based upon the ALJ's findings, her impairments clearly meet the 12.05C criteria.  She largely bases her argument on an IQ test administered on June 14, 2011, by the SSA's examining psychologist. Tr. 307-308.  That test showed a perceptual reasoning score of 69, a verbal comprehension score of 70, and a full scaled score of 71.  Deihs argues that the two sub-70 scores are sufficient to meet the requirements of 12.05C, and that the ALJ offered no reason for not finding that she met those requirements.

The determination of whether a claimant meets or equals the requirements of any impairment in the Appendix 1 Listing of Impairments is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  At step three, the burden remains on the claimant to establish that her impairment meets or equals an impairment enumerated in the Appendix 1 Listing of Impairments, not on the Commissioner to prove that the claimant does not satisfy a listing. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

At issue in this case is Listing 12.05, which addresses intellectual disability.  Listing 12.05C requires Deihs to prove that she met all of the following criteria:

> 12.05 **Mental Retardation**: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> * * *

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05. Social security regulations specify that the "narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Part 404, Subpart P Appx 1 § 12.00D(6)(a).

Dr. Douglas R. Ritz, Ph.D, who performed the IQ test stated "likely the cognitive functioning as assessed on the WAIS-IV was an underestimate of her abilities." Tr. 307. The Fifth Circuit permits an ALJ to reject an IQ score in certain circumstances. *Muse v. Sullivan*, 925 F.2d 785, 789–90 (5th Cir.1991) (per curiam) (scores inconsistent with job history, past medical records, and showing of good memory; claimant unable to see during examination). *See also, Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003) (scores inconsistent with ability to care for oneself and perform activities of daily living); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998) (scores derived from "first and only meeting" with examiner and were inconsistent with record of functional ability and prior medical record). In this case, the ALJ found that "Dr. Ritz reported that her effort was variable and sometimes very poor. . . . Dr. Ritz opined that the claimant could perform unskilled work. I gave significant weight to Dr. Ritz's opinion, which was less restrictive and not inconsistent with the medical evidence of record." Tr. 17. *See Lax v. Astrue*, 489 F.3d 1080, 1086 (10th Cir. 2007) (approving an ALJ's rejection of an IQ score where psychiatrist noted that the claimant's "responses appeared unreliable" and was attempting to achieve low scores). Additionally, Deihs' treating physician described her intelligence as "average." Tr. 427.

Contrary to Deihs' contentions, this is not a case where the Commissioner is offering post-hoc arguments for affirming an ALJ's decision. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). The Court's decision must be based on the reasons given by the ALJ, and must stand or fall on this basis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985). In this case, the Court finds the ALJ gave adequate reasons for discounting Deihs' low IQ scores – that the examiner found she put forth poor effort on the tests rendering those tests an underestimate of her true abilities.

Additionally, the record supports that Deihs did not meet the additional requirements of Listing 12.05C. Listing 12.05C requires not only the necessary IQ but "significantly subaverage general intellectual functioning with deficits in adaptive functioning" manifested before age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Deihs' medical records prior to age 22 do not reflect deficits in adaptive functioning. Tr. 239-244, 358, 362, 367, 397, 401, 406. Instead they reflect that she dropped out school due to a pregnancy. Tr. 40, 240, 242, 306. Deihs must meet all the specified medical criteria to be found disabled at step three, and she failed to do so. *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). The ALJ did not err and his findings are based upon substantial evidence.

**B.     The ALJ's Consideration of Deihs' Treating Psychologist's Opinion**

Deihs next argues that the ALJ erred when he failed to consider the opinion of her treating physician and failed to consider the factors set forth in 20 C.F.R. 416.927 as required by Fifth Circuit precedent. Psychologist Wilton L. Hellams, Ph.D., completed a medical questionnaire in October

of 2012. Tr. 421-23.  Dr. Hellams opined that Deihs' impairments rendered her aptitude to perform a job "poor" or "none" in most areas.  He did opine she could perform in a range of "good" to "poor" or "good" to "fair" in seven areas dependent upon her mood.  *Id.*  Dr. Hellums stated that because of her mood swings and variability of performance, Deihs would not be able to consistently maintain employment. *Id.*

Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown.  The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).  An ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).  The ALJ explicitly gave "limited weight" to Dr. Hellums opinion.  Tr. 19.  He explicated that Deihs was off her medications for several months and that Dr. Hellums ignored the periods in which Deihs complied with her medications and her symptoms improved.  *Id.*  Additionally, he noted that Dr. Hellums reported that Deihs was self-medicating with alcohol and that Deihs had not seen Hellums for a period of two years.  Tr. 16.  The ALJ found that Dr. Hellums' opinion was inconsistent with the remaining evidence of record.  Tr. 19.

Additionally, a medical source's opinions on some issues are not medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20

C.F.R. § 404.1527(d). Thus, a treating source's statement or opinion that the claimant is "disabled" or "unable to work," is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. The factors set out in the regulations apply only to medical opinions, not opinions reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). To the extent that Dr. Hellums opined that Deihs was unable to work, the ALJ properly discounted this opinion.

Deihs also argues that the ALJ erred when he failed to specifically determine that Deihs has the capacity to maintain sustained work. The Fifth Circuit has made clear that an ALJ is not required in every case to make a separate finding that a social security claimant who is capable of performing a job, will also be able to maintain that job. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); *Frank,* 326 F.3d at 619. "Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank,* 326 F.3d at 619. However, the court has observed that, "[n]evertheless, an occasion may arise . . . where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required." *Id.* (citing *Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir. 2002)). Such a circumstance arises if, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank,* 326 F.3d at 619.

Deihs asserts that her mental impairments "wax and wane." However, "it is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must demonstrate that her particular impairment waxes and wanes." *Thornhill v. Colvin*, No. 3:14–CV–335–M, 2015 WL 232844 (N.D. Tex. Jan.16, 2015). Deihs argues that her primary mental impairment of bipolar

disorder is literally characterized by fluctuating moods and therefore meets the "waxes and wanes" requirement.

However, numerous courts have required something more than a mere diagnosis of bipolar disorder to determine that the impairment waxes and wanes in its manifestation of disabling symptoms such that a separate finding regarding the claimant's ability to maintain work is required. *See, e.g., Barratt v. Astrue*, No. 07–51067, 2008 WL 2325636, at *1–2 (5th Cir. June 6, 2008) (per curiam) (holding that the ALJ was not required to make the separate finding because there was no evidence that the claimant "could work only in short spurts, or that his [bipolar disorder] otherwise waxes and wanes in a manner that prevents him from maintaining employment").[1] "Absent evidence that a claimant's ability to maintain employment would be compromised despite [her] ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC, [the court does] not ... require a specific finding that the claimant can maintain employment." *Dunbar*

---

[1] *See also Latoksi v. Astrue*, No. 2:09–CV–198, 2011 WL 4526086, at *1415 (N.D. Tex. Sept. 13, 2011) (holding that the ALJ was not required to make the separate finding because there was no evidence showing that the claimant's bipolar disorder fluctuated between "periods of apparent stability and periods of definite incapacitation" to such a degree that would render her unable to maintain employment), adopted by 2011 WL 4526086 (N.D.Tex. Sept.28, 2011); *Todd v. Astrue*, No. H–09–2687, 2010 WL 3894102, at *13 (S.D. Tex. Sept.30, 2010) (concluding that there was no evidence that, "by its nature," the claimant's bipolar disorder waxed and waned in sufficient intensity to require the separate finding); *McPeters v. Astrue*, No. 1:07–CV–112–C, 2008 WL 4414542, at *13 (N.D. Tex. Sept. 30, 2008) (concluding that, even though the symptoms imposed by the claimant's bipolar disorder and other mental impairments had "varied" over the years, the ALJ did not err by omitting the separate finding); *see also Tigert v. Astrue*, No. 4:11–CV–435–Y, 2012 WL 1889694, at *7 (N.D. Tex. May 2, 2012) ("[I]t is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must demonstrate that his particular impairment waxes and wanes."), adopted by 2012 WL 1899388 (N.D. Tex. May 24, 2012).

*v. Barnhart,* 330 F.3d 670, 672 (5th Cir. 2003); *accord Patterson v. Astrue*, 324 F.App'x 419, 422 (5th Cir. 2009) (unpublished); *Perez*, 415 F.3d at 465.

There is no medical evidence in the records establishing that, by its nature, Deihs' bipolar and other mental disorders "wax and wane" in intensity such that her ability to maintain employment was not adequately taken into account in her RFC determination. *See Perez*, 415 F.3d at 465. The ALJ reviewed the record as a whole and included limitations attributable to Deihs' mental impairment in his finding that Deihs should be limited to performing work consisting of simple routine tasks and have no interaction with the public. The ALJ noted that Deihs could drive, care for her four children, cook, clean, and shop. Tr. 20. Additionally, he noted that Deihs has a history of noncompliance with her medication. *Id.* In this case, Deihs relies solely upon the report of Dr. Hellums, which the ALJ gave little weight. Deihs has not offered additional evidence that her condition "waxes and wanes" in intensity such that she is unable to maintain employment at the level assessed by her RFC. Therefore, the ALJ did not err in failing to make a finding as to whether Deihs would be able to maintain any employment she might obtain. *See Gandara v. Astrue*, No. 4:10cv 4243, 2011 WL 4852327, at *14 (S.D. Tex. Oct.12, 2011).

C. **The ALJ's Consideration of Deihs' Former Employer's Statement and Alleged Failure to Acknowledge that Her Inconsistent Treatment Was Due to Financial Inability to Pay for Treatment**

Deihs next complains that the ALJ failed to properly consider the statement she offered by a former employer. Tr. 170. The statement is a letter from Crystal Henson, who was apparently Deihs' supervisor at Captain D's four to five years prior to the hearing. According to Deihs, Henson related that Deihs would sometimes come to work and "be so happy" and "work her butt off" and

10

then "like a click of a button, she would become nasty have no patience." *Id.* She also related that Deihs would sometimes fail to show up for work or walk off the job. *Id.*

As pointed out by the Commissioner, the letter, dated October 12, 2012, states that Deihs last worked for her former employer four to five years in the past – i.e., sometime in 2007 or 2008. Tr. 170. Deihs does not claim she became disabled until October 1, 2008. Tr. 149, 155. Moreover, the medical records show that Deihs often had normal findings upon mental status examination dating back to 2008, the same period that this prior employer claimed she had significant mental symptoms that precluded work. Tr. 247, 249, 252-53, 256, 258, 260, 262, 264, 266, 268, 270, 272, 274. Considering the record as a whole, the ALJ properly focused his discussion on the contemporaneous findings of mental health professionals, rather than on the subjective statement from a former employer based on interactions four or five years earlier. *See Bordelon v. Shalala*, 31 F.3d 661, 1994 WL 684574 *1 (5th Cir. 1994) ("the ALJ need not discuss every piece of evidence in the record"). Remand is not required for the ALJ to explicitly discuss the letter from Deihs' former employer.

Lastly, Deihs maintains that the ALJ gave undue weight to her noncompliance with her prescribed medication regimen. Deihs asserts that the ALJ did not consider that she had lost her insurance and had difficulty paying for her medications. A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). At the October 2012 administrative hearing, Deihs testified that she lost her insurance in 2011. Tr. 64. However, the record contains references to Deihs' non-compliance with prescribed medications in 2008, 2009, and 2010, when she still was covered by insurance. Tr. 274, 255, 258, 260, 247, 249, 302. Moreover, for Deihs' non-compliance to be excused due to inability to afford treatment, she must demonstrate that she has been denied treatment

through free or low-cost medical services potentially available. SSR 82-59, 1982 WL 31384, at *4 ("All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored" before an individual may claim she is unable to afford prescribed treatment; *see also* SSR 96-7p, 1996 WL 374186, at *8. Deihs has not shown that she sought free or low-cost medical services, or that she was denied treatment due to an inability to pay. The Court finds that the ALJ properly considered Deihs' non-compliance that is documented in the record evidence.

## IV. Conclusion

In summary, the Court finds that the ALJ applied the proper legal standards to Deihs' case, and that his findings are supported by substantial evidence in the record. As such, Deihs has failed to establish any grounds for relief.

For the foregoing reasons, it is ORDERED that the decision of the Commissioner of the Social Security Administration to deny disability insurance benefits to Malikah Sandree Deihs is hereby AFFIRMED.

SIGNED this 13th day of April, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE